

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3307 | **DATE** | 3/28/2003 |
| **CASE TITLE** | Norman Calhoun vs. Kenneth R. Ramsey, et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the Court grants in part and denies in part defendants' motion for summary judgment [38-1]. Status hearing set for 4/9/03 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

MAR 3 1 2003
date docketed

docketing deputy initials

date mailed notice

Document Number

TBK — courtroom deputy's initials

U.S. DISTRICT COURT

03 MAR 28 AM 11:34

FILED CO ZO

Date/time received in central Clerk's Office

mailing deputy initials

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| NORMAN CALHOUN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| KENNETH R. RAMSEY, Sheriff | ) | 00 C 3307 |
| of Kane County, Illinois, | ) | |
| PETER JAMES O'Connor, | ) | |
| LYNN KIMMEL, and | ) | |
| CORRECTIONAL SERVICES OF | ) | |
| ILLINOIS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED

MAR 31 2003

## MEMORANDUM OPINION AND ORDER

In this civil rights suit, brought pursuant to 42 U.S.C. § 1983, plaintiff Norman Calhoun

("Calhoun") has sued Kenneth R. Ramsey, Sheriff of Kane County, Illinois ("the Sheriff") in his

official capacity, Correctional Services of Illinois, Inc. ("CMS"), an Illinois corporation, and

Officer Peter James O'Connor ("O'Connor") and nurse Lynn Kimmel ("Kimmel"), both sued in

their individual capacity, alleging that all defendants violated his rights as guaranteed under the

Eighth Amendment when they failed to get plaintiff's medication to him in a timely manner on

the first night of his work release confinement.[1]  Presently before the Court is defendant's

motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56.  For the

reasons stated herein, defendant's motion for summary judgment is granted in part and denied in

part.

---

[1] Although plaintiff also sues CMS for negligence, defendants have not moved for
summary judgment as to that claim and only move for summary judgment as to Calhoun's
section 1983 claim.

# FACTS

Unless noted, the following facts are undisputed or deemed admitted by the party's noncompliance with Local General Rule 56.1, a rule which this Court strictly enforces. Plaintiff is a former inmate of the Kane County Adult Correctional Facility ("the Jail"). (Defs.' LR 56.1(a)(3) ¶ 1.)[2] On June 1, 1999, plaintiff went to the Jail at approximately 7:00 p.m. to begin serving a 120-day work release sentence. (*Id.*) Plaintiff's claims arise from his incarceration at the Jail during a two to three-hour period on that night. (*Id.* ¶ 8.)

Shortly after plaintiff arrived at the Jail, he spoke with the booking officer, Peter O'Connor, who wrote down plaintiff's basic information. (*Id.* ¶¶ 15-16.) Officer O'Connor then took possession of plaintiff's various medications. (*Id.*) O'Connor placed plaintiff in a holding cell and called a nurse to speak with him about his medications. (*Id.* ¶¶ 17-18.) Shortly thereafter, a nurse, Lynn Kimmel, arrived at the booking area to speak with plaintiff. (*Id.* ¶ 19.) Nurse Kimmel is employed by CMS, which provides medical services to inmates at the Jail pursuant to a contract with Kane County. (*Id.* ¶ 5.)

---

[2]Plaintiff asserts the following facts, which are contested, but for purposes of the summary judgment motion are taken as true when viewed in the light most favorable to him: (1) On May 12, 1999, before his confinement began, plaintiff telephoned the jail to inquire about procedures for distributing medications and for possessing a TENS unit and was told by someone who he believed was a doctor "not to worry about it, just bring my medications in with me" and that he was not permitted to have a TENS unit in the Jail. (Pl.'s LR56.1(b)(3)(B) ¶¶ 1-4) and (2) On May 28, 1999, plaintiff made a personal visit to the Jail to again inquire about his medications and TENS unit and again he was told by someone to bring his medications with him when he arrived at the jail and told that he was not permitted to have a TENS unit. (*Id.* ¶¶ 5-8.) Plaintiff does not state in his response to defendants' statement of facts or in his statement of additional facts that on either of those dates he told anyone that if he did not take his prescribed doses of medication at 9:00 p.m. he would experience serious medical complications. It is undisputed that Calhoun did not have a Medication Administration Record already prepared for him prior to his arrival at the Jail on June 1, 1999, and that prior to that time Nurse Kimmel did not have any notice that he would be arriving at the Jail that evening. (Defs.' LR56.1(a)(3) ¶ 37.)

Plaintiff discussed with Nurse Kimmel the purpose of each of his medications and at what time these medications had to be administered to him. (*Id.* ¶ 20.) Nurse Kimmel wrote down plaintiff's medical information and history. (*Id.*) Plaintiff's neurologist had prescribed a TENS unit to relax his muscles. (*Id.* ¶ 51.) A TENS unit is an electronic device that, when attached to a person's muscles, emits an electric shock and sends impulses through the muscles to relax them. (*Id.* ¶ 48.) Plaintiff advised Nurse Kimmel that he (1) had a herniated disc between C5 and C6, (2) had a crushed disc at C5, (3) had cancer caused by Agent Orange, (4) was allergic to chlorine, (5) wanted two mattresses and a pillow while incarcerated and that he slept on a $1200 mattress at home, (6) had been diagnosed with severe cervical radiculopathy. (*Id.*) The following are the prescription medications that plaintiff brought with him to the Jail: Allopurinol (prescribed for gout), Lisinopril (prescribed for high blood pressure), Ibuprofen (prescribed for headaches), vitamins, Diazepam (prescribed for muscle relaxation in Calhoun's neck and shoulders) and trazodone (prescribed by his psychiatrist as an anti-depressant and an anti-inflammatory). (*Id.* ¶ 22.) Nurse Kimmel took Calhoun's various medications with her as she left. (*Id.* ¶ 20.) Plaintiff was not experiencing any medical problems at this time that required immediate treatment. (*Id.* ¶ 21.)

Of the medications that plaintiff brought with him to the Jail, only Diazepam and Trazodone had to be administered at "QHS," a medical term referring to "hour of sleep." (*Id.* ¶ 23.) However, the medication that plaintiff claims he should have been administered by O'Connor and Kimmel are Diazepam, Ibuprofen and Lisinopril. (*Id.* ¶ 38.) Nurse Kimmel, paged the Jail physician, Dr. Aguinaldo, and the Jail psychiatrist, Dr. Kaarianinen, to obtain an order for plaintiff's medications. (*Id.* ¶¶ 24-25; Defs.' Ex. C, Kimmel Dep., at 11,12, 43-44; Defs.' Ex. F, Zegar Dep., at 40-43; Kane County Jail Medical Records.) This was done at

approximately 8:30 p.m. (Defs.' LR56.1(a)(3) ¶ 24.)

Dr. Kaarianinen returned Nurse Kimmel's page at approximately 9:00 p.m. and issued a prescription for Trazodone to be taken at "QHS." (*Id.* ¶ 25; Defs.' Ex. C, Kimmel Dep., at 13-15.) Because Dr. Kaarianinen only prescribed psychiatric medication, Nurse Kimmel waited for Dr. Aguinaldo to call with an order for plaintiff's remaining medications. (*Id.*)

According to Calhoun, he started to ask for his medications at 8:00 p.m. and stated that he needed to have his medications by 9:00 p.m, and he was told not to worry. ( Pl.'s LR56.1(b)(3)(B) ¶ 14; Defs.' Ex. B, Calhoun Dep., at 69.) At 8:30 p.m., 8:45 p.m. and at 9:00 p.m. he repeated his statement. (Defs.' Ex. B, Calhoun Dep., at 69.)[3] At 9:10 or 9:15 p.m., he experienced an anxiety attack and spasms from his neck down to his lower back. (*Id.*, at 67.) It was then that O'Connor summoned Nurse Kimmel for medical assistance. (*Id.*, at 67-69.) Nurse Kimmel arrived within twenty minutes of the onset of Calhoun's spasms and anxiety attack. (*Id.*, at 71.) Nurse Kimmel and Officer O'Connor entered plaintiff's cell, and Nurse Kimmel took plaintiff's vital signs and directed another officer to call for an ambulance. (Defs.' LR56.1(a)(3) ¶¶ 29-30.)

The ambulance arrived at the jail at approximately 9:45 p.m. and transferred plaintiff to the Emergency Room at Delnor Community Hospital. (Pl.'s Ex. 1, Calhoun Dep., at 119; Kane County Jail Medical Records.) Plaintiff was admitted to the ER at approximately 10:20 p.m. (*Id.*; Def.'s Ex. J., Delnor Medical Records.) In the ER, plaintiff was treated with Vistaril for anxiety, Valium as a muscle relaxer, and Flexeril as a muscle relaxer and anti-inflammatory. (Pl.'s Ex. 1, Calhoun Dep., at 117-19; Delnor Medical Records.) Plaintiff was observed by

---

[3]However, according to another inmate, Steven Ruby, he heard plaintiff request his medications "a couple dozen times." (Pl.'s Ex. 2., Ruby Dep., at 18.)

doctors at the ER for approximately 45 minutes, and was then discharged at approximately 11:30 p.m. (Pl.'s Ex. 1, Calhoun Dep., at 119-120; Defs.' Ex. F, Zegar Dep., at 93; Delnor Medical Records.) The ER records note that plaintiff was discharged in good shape, and he was allowed to go home from the ER because he had been released, at that time, from the Sheriff's custody. (Pl.'s Ex. 1, Calhoun Dep., at 120; Defs.' Ex. J, Delnor Medical Records.)

## DISCUSSION

Pursuant to Rule 56(c) summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To determine whether a genuine issue of material fact exists, the court does not weigh the evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court "must view the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the nonmoving party." *Baron v. City of Highland Park*, 195 F.3d 333, 337 (7th Cir. 1999). The nonmoving party may not rest on his pleadings however, instead he must demonstrate through specific factual allegations that there is a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Unless a reasonable jury could find for the nonmoving party, summary judgment must be granted. *Anderson*, 477 U.S. at 249.

42 U.S.C. § 1983 provides "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law . . . ." "To state a claim under this provision, a plaintiff must allege that he was deprived of a federal right and that the deprivation was imposed upon him by a person acting under color of state Law." *Harbours Pointe of Nashotah, LLC v. Vill. of Nashotah*, 278 F.3d 701, 704 (7th Cir. 2002).

Plaintiff has asserted an Eighth Amendment violation based on deliberate indifference to his serious medical needs against (1) Officer O'Connor in his individual capacity, (2) Nurse Lynn Kimmel in her individual capacity, (3) Sheriff Ramsey in his official capacity, and (4) CMS, an Illinois corporation. "In an Eighth Amendment claim of inadequate medical care in a prison, a plaintiff must show that a responsible state official was deliberately indifferent to his or her serious medical condition." *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). "A deliberate indifference claim contains both objective and subjective elements." *Walker v. Benjamin*, 293 F.3d 1030, 1036 (7th Cir. 2002). "The deprivation suffered by the prisoner must be objectively sufficiently serious." *Id.* "The subjective element requires that the prison official acted with a sufficiently culpable state of mind." *Id.* "[A] prisoner claiming deliberate indifference need not prove that the prison officials intended, hoped for, or desired the harm that transpired." *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). "It is enough to show that the defendants actually knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk." *Walker*, 293 F.3d at 1036.

In support of the motion for summary judgment, Officer O'Connor and Sheriff Ramsey[4]

---

[4]While defendant Sheriff Ramsey has also asserted a qualified immunity defense, he has only been sued in his official capacity and is therefore not entitled to this defense. "Because the rationale that supports qualified immunity from suit in individual capacity cases is absent in official capacity cases, it is well established that the qualified immunity doctrine does not apply to official capacity claims." *Ruffino v. Sheahan*, 218 F.3d 697, 700 (7th Cir. 2000).

raise the affirmative defense of qualified immunity. Further, all defendants argue that Calhoun has failed to establish a genuine issue as to a material fact as to his deliberate indifference claim.

## I. Officer O'Connor

Plaintiff argues that defendant Officer O'Connor was deliberately indifferent to plaintiff's serious medical needs by failing to get plaintiff's medication to him in a timely manner. In response, defendant Peter O'Connor raises the defense of qualified immunity.

Qualified immunity protects government officials from liability for damages if their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal quotations omitted). In order to overcome the qualified immunity defense plaintiff must satisfy a two-prong test by: (1) alleging the deprivation of an actual constitutional right, and (2) demonstrating that the right in question was clearly established at the time of the alleged violation. *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

With regard to the first prong of the test, plaintiff has alleged the deprivation of valid constitutional rights as to his need for medical attention. *See Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001). Accordingly, plaintiff has satisfied the first prong.

As to the second prong, "[t]o invoke a 'clearly established' right, the Supreme Court has explained that the right must be 'particularized' to the extent that '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Plaintiffs argue that O'Connor should not be afforded qualified immunity, and they rely solely on *Egebergh v. Nicholson*, 272 F.3d 925, 927-28 (7th Cir. 2001). In *Egebergh*, the

7

Seventh Circuit found qualified immunity inapplicable where one officer knew plaintiff was an insulin-dependent diabetic who required regular insulin injections, another officer knew that plaintiff required insulin and that diabetes is potentially fatal, yet both refused to provide him with a requested insulin injection, and as a result, plaintiff died. *Id.*

In contrast with the facts in *Egebergh*, although the facts show that O'Connor was aware that Calhoun took a lot of medications, there is no evidence in the record to show that he was aware of Calhoun's medical conditions for which he was prescribed medication or the particular consequences of any delay in Calhoun's 9:00 p.m. doses. Although it is disputed whether, between 8:00 and 9:10 or 9:15 p.m., "[o]ne of plaintiff's cellmates stated that plaintiff 'is dying'" and that one of the other officers, not O'Connor, responded either "I don't care; let him die" or "I hope he does die", neither Calhoun's statement in response to defendants' LR56.1 statement of facts nor his statement of additional facts establishes a genuine issue of material fact as to whether O'Connor heard or was aware of any of these statements. (*See* Pl.'s LR561.(b)(3)(B) ¶ 19. *Compare* Defs.' LR56.1(a)(3) ¶ 29, *with* Pl.'s LR56.1(b)(3)(A) ¶ 29.) Further, although it is disputed whether one of plaintiff's cellmates heard Calhoun tell Nurse Kimmel during his initial conversation with her that Calhoun said his "medicines were essential; that if he didn't have them, he would become unable to breathe," this fact, even when viewed in the light most favorable to Calhoun, does not establish that O'Connor was aware of this. (*See* Pl.'s LR56.1(b)(3)(B) ¶ 15; Pl.'s Ex. 2, Ruby Dep., at 17.)

The facts of this case, viewed in the light most favorable to plaintiff, show that shortly after plaintiff arrived at the jail at approximately 7:00 p.m., he spoke with O'Connor, who wrote down plaintiff's basic information, such as name, date of birth, etc. (*Id.* at 37; Def.'s Ex. D., O'Connor Dep., at 18-19.) Officer O'Connor then took possession of plaintiff's various

medications, placed him in a holding cell, and called Nurse Kimmel to speak with him about his medications. (Pl.'s Ex. 1, Calhoun Dep., at 38-39; Defs.' Ex. D, O'Connor Dep., at 18-19.) After Nurse Kimmel took possession of Calhoun's medications for the verification process, according to Calhoun, he started to ask for his medications at 8:00 p.m. and stated that he needed to have his medications by 9:00 p.m,. and he was told not to worry. (Defs.' Ex. B, Calhoun Dep., at 69.) At 8:30 p.m., 8:45 p.m., and 9:00 p.m., he repeated the statement to O'Connor. (*Id.*) At 9:10 or 9:15 p.m., Calhoun experienced an anxiety attack and spasms from his neck down to his lower back. (*Id.*, at 67.) At that time, Calhoun stated to O'Connor that if they did not get him his medication, they would be taking him out in an ambulance. (*Id.*, at 69.) O'Connor then summoned Nurse Kimmel for medical assistance. (*Id.*, at 67-69.) Nurse Kimmel arrived within twenty minutes of the onset of Calhoun's anxiety attack and spasms. (*Id.*, at 71.)

Based on the facts viewed in the light most favorable to Calhoun, O'Connor could not have reasonably understood that his conduct was in any way violating or preventing Calhoun's constitutional rights. While O'Connor did not call Nurse Kimmel immediately after Calhoun began requesting at 8:00 p.m. that he needed his medications at 9:00 p.m., and did not in fact call Nurse Kimmel until after Calhoun displayed muscle spasms at 9:10 or 9:15 p.m., the statements of facts pursuant to LR56.1, which this Court strictly enforces, do not establish a genuine issue of material fact as to O'Connor's actual knowledge of a substantial risk to Calhoun's health or safety prior to 9:10 or 9:15 p.m. that evening, O'Connor's failure to take reasonable measures when he drew the conclusion that Calhoun required immediate medical care, or O'Connor's subjective intent to harm or deliberate indifference.

The Court therefore grants defendant O'Connor's motion for summary judgment because

9

he is entitled to qualified immunity. Accordingly, this Court proceeds to the merits of plaintiff's section 1983 claims as to Nurse Kimmel, Sheriff Ramsey and CMS.

## II. Nurse Kimmel

Plaintiff contends that defendant Lynn Kimmel was deliberately indifferent to his medical needs and deprived him of his rights secured by the Eighth Amendment and the Fourteenth Amendment of the United States. Because plaintiff had already been sentenced and placed in jail during the incident that gave rise to his claims, these claims must be judged under the Eighth Amendment. *See Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000). As stated above, the Eighth Amendment protects prisoners from deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to succeed on a claim of deliberate indifference, a prisoner must show that (1) he had an objectively serious injury or medical need; and (2) the official knew the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it. *See id.*

Under the first prong of this test, an objectively serious injury is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). The record indicates that plaintiff suffered from, among other things, breast cancer, muscle spasms, a herniated disc between C5 and C6, and a crushed disc at C5. (Defs.' LR56.1(a)(3) ¶¶ 20, 22.) His physicians prescribed medication for these ailments. *Id.* Collectively, these are objectively serious injuries.

To satisfy the second prong of this test, "the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must

10

also draw the inference." *Zentmyer v. Kendall County*, 220 F.3d, 805, 811 (7th Cir. 2000). "Deliberate indifference can arise by a failure to provide prompt treatment for serious medical needs or by intentionally interfering with treatment once prescribed." *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). In addition, "[n]either negligence or even gross negligence is a sufficient basis for liability; rather, liability attaches only if the conduct is intentional or criminally reckless." *Id.*

In *Zentmyer v. Kendall County*, a pretrial detainee brought a section 1983 suit against his jailers for deliberate indifference because they failed to administer several doses of prescription antibiotics for his ear infection, which he claimed led to permanent hearing loss in his right ear. The *Zentmyer* court stated that none of the cases on which plaintiff relied "hold that failure to administer medication exactly as prescribed without additional exacerbating hardships violates the Eighth or Fourteenth Amendment." 220 F.3d at 812. The court stated "deliberate indifference is an onerous standard for the plaintiff, and forgetting doses of medicine, however incompetent, is not enough to meet it here." *Id.*

Similar to the facts of *Zentmyer*, the conduct of which Calhoun complains is that Nurse Kimmel did not administer Diazepam (prescribed for muscle relaxation for his neck and shoulders), Ibuprofen (prescribed for headaches) and Lisinopril (prescribed for high blood pressure) at 9:00 p.m. on June 1, 1999. It is undisputed that after initially speaking with Calhoun about his medical history, his medications, and the reasons why such medications had been prescribed by his physicians, Nurse Kimmel paged Dr. Aguinaldo, the Jail physician, and Dr. Kaarianinen, the Jail psychiatrist, at 8:30 p.m. so that they could verify and order the prescriptions. (Defs.' LR56.1(a)(3) ¶ 24.) At approximately 9:00 p.m., Dr. Kaarianinen returned her page and prescribed 100 mg. of Trazodone at QHS, or time of sleep. (*Id.* ¶ 25.) It is also

deemed admitted that Nurse Kimmel awaited Dr. Aguinaldo's call with regard to the other medications because Dr. Kaarianinen as the psychiatrist only ordered psychiatric medication. (*Id.*) The onset of Calhoun's muscle spasms occurred at approximately 9:10 or 9:15 p.m. (Defs.' Ex. B, Calhoun Dep., at 69.) After she was summoned by Officer O'Connor, Nurse Kimmel returned to the booking area by approximately 9:30 p.m., examined Calhoun, directed another officer to call an ambulance, and remained with Calhoun until the ambulance arrived at 9:45 p.m. (Defs.' LR56.1(a)(3) ¶¶ 30-31.)

It is clear from the undisputed facts in the record that Nurse Kimmel's conduct with regard to the prescription medication verification procedure and with regard to her conduct relating to her response to being summoned back to the booking area does not constitute deliberate indifference to Calhoun's medical needs. While the record shows that Nurse Kimmel decided not to call plaintiff's prescribing physicians because it was after business hours and instead paged the Jail's physicians, this is an inconsequential and reasonable variance in implementing the specific jail policies at issue.[5] The undisputed facts show that Nurse Kimmel paged Drs. Aguinaldo and Kaarianinen to obtain Calhoun's prescriptions in a timely manner. Although Calhoun may argue that any delay in the administration of his prescribed doses of Diazepan, Ibuprofen, and Lisinopril constitutes deliberate indifference, the Eighth Amendment simply does not require such an instantaneous response given the facts of this particular case. The record shows that Nurse Kimmel had just obtained Dr. Kaarianinen's order for Trazodone at 9:00 p.m. and was in the process of obtaining Dr. Aguinaldo's order for the other medications at the time when Calhoun began experiencing spasms. As soon as she was summoned by

_____

[5]Calhoun does not appear to contend that Nurse Kimmel's not calling his prescribing physicians, Drs. Neri, Tsai, and Labotka constitutes deliberate indifference.

12

O'Connor, Kimmel returned to the holding cell, took plaintiff's vital signs, and directed another officer to call for an ambulance. The ambulance arrived at the jail at approximately 9:45 p.m. and transferred plaintiff to the Emergency Room at Delnor Community Hospital. Notably there is nothing in the LR56.1 statements of fact that indicates that Nurse Kimmel would not have obtained and administered the required doses of medications to be taken at QHS, or time of sleep, had Calhoun not been transferred to Delnor. Accordingly, the Court grants summary judgment in favor of Nurse Kimmel.

## III.  Sheriff Ramsey and CMS

Plaintiff contends that defendants' policy of (1) verification of prescription medicines by paging the Jail's physicians, (2) prohibiting work release prisoners from wearing a TENS unit unless prescribed by a Jail physician, and (3) practice of not pre-verifying medications despite requests prior to an inmate's arrival constitutes deliberate indifference. In order for plaintiff to prevail on this section 1983 claim, plaintiff must show a deprivation of his constitutional rights, and that the deprivation in question was caused by a policy or custom of the defendants. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Plaintiff can establish such a policy by showing: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734-35 (7th Cir. 1994) (internal quotations and citations omitted).

In *DeGenova v. Sheriff of DuPage County*, a pretrial detainee brought a section 1983

13

action against the Sheriff of DuPage County and the Deputy Sheriff alleging that they were deliberately indifferent to his medical needs because, although he obtained permission from a defendant officer to bring two heart medication pills with him and told the officer he had to take a pill at 9:00 p.m., they did not administer doses of his heart medication on time at 9:00 p.m. or at 9:00 a.m. the following morning. No. 97 C 7208, 2001 WL 1345991, at *8 (N.D. Ill. Oct. 31, 2001). The policy at issue in *DeGenova* provided that "If you were receiving treatment when admitted to the jail, Healthcare staff will attempt to contact your doctor for information to determine the need to continue treatment." *Id.* at *9. The *DeGenova* court held that the policy was constitutional and was supported by the Illinois County Jail Standards.

The medication verification policy at issue in the instant case is similar to the policy in *DeGenova*. The policy, entitled "Medications Brought to Institution by Inmate," is set forth in the Policy and Procedure Manuel of CMS and provides that "medications prescribed for inmates prior to incarceration will be verified through the prescribing authority and, if approved by the Medical Director, indicated therapy will be continued during incarceration." (Def.'s. Ex. I., CMS Policy No. 30.05 -Medication Brought to Institution by Inmate.) The policy procedures provide that:

> (1) "any prescribed medications on the inmate's person at the time of booking will be brought to healthcare personnel or documented on the screening form; (2) healthcare staff will document the following information for each medication (name, dosage, frequency, name of prescriber, date, and pharmacy); (3) after review and documentation by the healthcare staff, personal medications will be stored with the inmate's property; (4) any inmate who at the time of booking states that he/she is taking a prescribed medication will be interviewed and information obtained; (5) healthcare staff will attempt to verify prescription from prescribing authority by contacting physician's office or pharmacy as soon as possible; and (6) verification will be documented and appropriate information reported to the Medical Director for disposition."

(*Id.*)

Like the policy in *DeGenova*, the policy in this case of requiring prescription medication verification is not one of deliberate indifference. The policy and procedures seek to provide continuation of treatment during incarceration and provide that verification will be attempted as soon as possible. In addition, the policy and procedures are in accordance with the Illinois County Jail Standards, which dictate that: "any medication in the possession of a detainee at admission shall be withheld until verification of its proper use is obtained and documented. This verification shall be made as soon as possible, but within the time interval specified for administration of the medication on the prescription container." 20 Ill. Admin. Code § 701.40(j). The jail staff conducted themselves reasonably within the bounds of CMS Policy No. 30.05 and its procedures, and there is no scintilla of evidence in the record to support that Calhoun would not have received his prescribed doses of medication at time of sleep, which clearly is not as precise of a time interval as Calhoun would have it be.

Further, Calhoun contends that the fact that Nurse Kimmel paged the Jail physicians to verify his prescriptions because they were not on site delayed the administration of his doses of medications that night and accordingly that constitutes deliberate indifference on the part of the Sheriff and CMS. Plaintiff has not established, in either his response to defendants' statement of facts or his statement of additional facts, a genuine issue as to a material fact that the nurse's paging of the Jail's physicians is a policy, custom or practice at the Jail. He merely relies on the single incident on June 1, 1999. This is insufficient to satisfy *Monell* and its progeny. *See Rubeck v. Sheriff of Wabash County*, 824 F. Supp. 1291, 1300-01 (N.D. Ind. 1993) (granting summary judgment because plaintiff failed to present any evidence to support policy claim). The parties' statements pursuant to LR56.1, which the Court strictly enforces, do not broach the subject of whether Nurse Kimmel's conduct of paging the Jail's physicians was due to a policy,

15

custom or practice, and the Court is not required to comb the record to find a genuine issue as to a material fact for trial.

Even if plaintiff had established that the act of paging the Jail's physicians was a policy, custom or practice, the Court would still grant summary judgment in favor of these defendants. Similar to the policy held as constitutional in *DeGenova*, which required the jail staff to "attempt to contact your doctor for information to determine the need to continue treatment," *see* 2001 WL 1345991, at *9, the purported policy, custom, or practice of paging of the Jail's physicians in this case does not evince deliberate indifference. In fact, because the Jail's physicians are on call and employed by the Jail, the likelihood of a faster response time by them may be greater than that of the prescribing physicians, especially when requests are made after normal business hours. Contrary to Calhoun's assertions otherwise and based on the particular facts of this case, the Eighth Amendment simply does not require that Jail physicians be located on site for purposes of prescription medication verification. Accordingly, the Court grants summary judgment in favor of Sheriff Ramsey and CMS as to this claim.

The second policy, custom, or practice at issue concerns the Sheriff and CMS' prohibition of Calhoun's use of a TENS unit while he was in the holding cell on the night of June 1, 1999. Because the Sheriff and CMS admit that this is a policy, the Court proceeds to the determination whether the policy constitutes deliberate indifference.

In *Garvin v. Armstrong*, an inmate brought a section 1983 suit against the jail's medical director alleging that the jail policy of prohibiting an inmate's possession of asthma inhalers outside the presence of a medical staff member or jail officer was so medically unreasonable as to constitute deliberate indifference. 236 F.3d 896, 898 (7th Cir. 2001). The medical director defended the policy stating that inhalers are metal and could be fashioned into weapons. *Id.* The

*Garvin* court held that the policy was supported by the Illinois County Jail Standards and that the policy did not even come close to meeting the deliberate indifference standard. *Id.* at 899.

Similar to the asthma inhaler in *Garvin*, in the instant case, it is undisputed that the TENS unit can be fashioned into a weapon and is subject to abuse by the user. (Defs.' LR56.1 ¶ 50.) As in *Garvin*, the practice or policy of prohibiting an inmate's possession of a TENS unit while in a holding cell is supported by the Illinois County Jail Standards. Ill. Admin. Rules, § 701.90(f)(1) provides that "[s]ecurity of medical supplies shall be maintained at all times. . . . [A]busable medical supplies shall be secured and accessible only to designated staff."

Further, this Court does not agree with plaintiff's contention that the practice or policy of prohibiting the use of a TENS unit by an inmate in a holding cell evidences deliberate indifference. (*See* Pl.'s Mem. Opp'n Defs.' Mot. Summ. J., at 7.) A holding cell, as the name connotes, is a temporary accommodation to hold persons going through the booking process and houses several cellmates at a time in close proximity, as evidenced in this case by the fact that Calhoun had several cellmates. Calhoun concedes that the use of a TENS unit in a holding cell in the booking area has the potential for abuse because the user could use the device to paralyze a fellow inmate. (Defs.' LR56.1 ¶ 54.) In addition, the denial of Calhoun's use of a TENS unit during his temporary stay in the holding cell does not rise to the level of a deprivation "of the minimal civilized measure of life's necessities." *See Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). Accordingly, the Court grants summary judgment in favor of Sheriff Ramsey and CMS as to this claim as well.

The third policy, custom or practice plaintiff asserts is the Sheriff and CMS' not preverifying medications despite requests prior to an inmate's arrival. In this regard, plaintiff asserts the following facts, which are contested, but for purposes of the summary judgment

17

motion are taken as true when viewed in the light most favorable to him: On May 12, 1999, before his confinement began, plaintiff telephoned the jail and spoke to a person whom he believed to be the doctor in charge. (Pl.'s LR56.1(b)(3)(B) ¶ 1.) He told the doctor that he was on various medications and wanted to have them checked out so because he did not want any problems with getting his medication when he got to the Jail. (*Id.* ¶ 2.) The doctor told him "not to worry about it, just bring my medications in with me" and that he was not permitted to have a TENS unit in the Jail. (*Id.* ¶¶ 3-4) On May 28, 1999, plaintiff made a personal visit to the Jail and brought with him his medications because he wanted further assurance from the jail that he would not be deprived of his medication. (*Id.* ¶¶ 5-6.) When he asked to speak with the jail doctor, the deputy told him that he did not need to see the doctor, he should just bring his medications with him when he arrived at the jail, and he was not permitted to have a TENS unit. (*Id.* ¶¶ 6-8.) It is undisputed that Calhoun did not have a Medication Administration Record, which is a pre-verification of medications, prepared for him prior to his arrival at the Jail on June 1, 1999, and that prior to that time Nurse Kimmel did not have any notice that he would be arriving at the Jail that evening. (Defs.' LR56.1(a)(3) ¶ 37.) Lisa Zegar stated that pre-verification of an inmate's medication occurred only once or twice during the seven years she was the Jail's Health Care Administrator. (Defs.' Ex. F, Zegar Dep., at 12, 90.) A reasonable jury considering these facts and other facts in the record regarding the injuries Calhoun sustained could conclude that the Sheriff and CMS' practice of not pre-verifying medications despite an inmate's repeated requests to do so prior to confinement constituted deliberate indifference and caused Calhoun's injuries.

As is made it clear from the facts above, in spite of two attempts to alert the Kane County Sheriff of his particular needs so as to avoid the possibility of a medical emergency, Calhoun did

not have a medical administration record already prepared for him prior to his arrival at the jail on the evening of June 1, 1999 nor did Nurse Kimmel have any advance notice of his rather extensive medications or even that he would be arriving at the jail on the evening of June 1, 1999. A reasonable jury could find that this practice caused plaintiff's injuries. If so, the only question remaining is whether or not the policy constituted deliberate indifference to plaintiff's serious medical needs. There are sufficient disputed facts and gaps in the record to preclude us from concluding that this could not be so. Depending upon the details and specific circumstances of this particular case, a policy or practice which denies an inmate the opportunity to make sure that his medication is available on a timely basis when he is initially taken into custody may reasonably be found to constitute deliberate indifference. In the case at bar, for example, the plaintiff was not due to be taken into custody until 7:00 PM. This was after the time either prison doctors or private doctors would normally be at their offices for easy verification. In addition, plaintiff required a number of specific medicines for apparently several serious medical conditions. Further, the medications were prescribed to be administered shortly after his surrender into custody. He apparently attempted to advise the sheriff's office of all of these things in order to avert a crisis. He was ignored and sent away with a false assurance that he need not worry. The result was an ambulance ride to an emergency room. Could a jury of reasonable people conclude that this constitutes deliberate indifference? The Court believes it could.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part defendants' motion for summary judgment [doc. no. 38-1]. The Court grants the motion with regard to plaintiff's section 1983 claim against O'Connor and Kimmel, sued in their individual capacity, denies the motion with regard to plaintiff's section 1983 claim against the Sheriff and CMS regarding the policy or practice of denying pre-verification of a prisoner's medical needs, and grants the motion with regard to the other policies or practices of which Calhoun complains.


**SO ORDERED**                    ENTERED: *3/28/03*

_Ronald A. Guzman_
**HON. RONALD A. GUZMAN**
**United States Judge**